(8)

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

ANN ESLINGER,

Debtor(s).

JEANIE VANETTI,

Plaintiff(s),

v.

ANN ESLINGER,

Defendant(s).

Case No. 05-31400-C-7

Adversary No. 05-2378

FILED
MAR 31 2006
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Trial was held in this adversary proceeding on March 30, 2006, to determine the discharge status of a state court judgment. The court now renders its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.

### JURISDICTION

Jurisdiction is founded on 28 U.S.C. § 1334. This is a core proceeding that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(I).

36

FINDINGS OF FACT

Plaintiff Jeanie Vanetti rented to defendant Ann Eslinger premises commonly known as 340 Calmace Drive, Dixon, California, beginning March 1, 1998, pursuant to the terms of a written lease.

The landlord terminated the leasehold by giving a notice to vacate on approximately July 26, 2004. The defendant vacated the premises on approximately October 6, 2004.

When rented, the structure was an older building that was in average condition. The carpet, while not new, was in serviceable condition. Because the transaction was eligible for so-called "section 8" rental subsidies, housing authorities inspected the premises for defects and noted several defects of a minor nature.

When originally rented, the occupants were to be the defendant and two grandchildren. At some point during the tenancy, one of the grandchildren moved out and the defendant's son moved into the premises.

The lease contained a clause forbidding pets without the prior permission of the owner and then only upon the payment of a $200 "pet fee." At the time the tenancy began, the landlord gave authority for the defendant to have one "teacup" poodle. During the tenancy, there were as many as four dogs inside the house. There was also a cat that, although described as an outside cat, was frequently viewed by the landlady to be inside the house.

During the tenancy, the personal relations between landlord and tenant were strained. The landlord on several occasions required the tenant to remove accumulated "junk" from the garage and brought other matters regarding the upkeep of the premises to

the attention of the tenant in a fashion that the tenant did not welcome.

Defendant's son at one point worked as a maintenance landscape employee at a golf course and apparently did shop-type work in the garage. He also installed an electrically operated lawn sprinkler system. During the summer of 2004, he removed the water supply shut off valve to the structure, leaving the shut off value in the street at the water main as the sole method of shutting down water supply to the structure.

A boxed fan was also installed in the ceiling above the water heater, again apparently by the defendant's son, in a manner that did not meet basic craftsman work of the building trade.

There was a light fixture in the kitchen that became inoperable apparently during the summer of 2004 and was perceived to be sparking. The defendant's son disconnected the wire in the ceiling and replaced the fixture in a manner that turned out to be unsafe because the disconnected wire lay in contact with the metal ceiling fixture such that, if the light switch was turned on, anyone touching the fixture would receive a shock.

Also, during the summer of 2004, an unsafe electrical modification was made at the switch box in the garage, apparently by the defendant's son, the result of which was that a circuit with a 220 volt current was connected into a 110 volt power strip without a proper converting device being installed. Moreover, the electrical switch box was left in a state that would be unacceptable to anyone in the building trades, as well as probably being unsafe.

The landlord terminated the lease because she believed that there had been an unacceptably high number of police visits to the house by the Solano County Sheriff's Office during 2003 and 2004.

When the defendant vacated the premises, with the assistance of her son, several items of damage incident to the move occurred. The U-haul truck was backed up to the front door leaving tire tread depressions in the lawn. In addition, the truck twice was backed so close to the house that the top of the truck dented the roof gutter.

On October 6, 2006, after the premises had been vacated, the plaintiff landlord's contractor walked through the premises. The stench of accumulated pet urine in the carpet necessitated removal of all carpet from the house, which carpet had been in serviceable condition six and one-half years earlier. It was apparent that standards of cleanliness had been low, and, in the opinion of the contractor, the wear and tear was greater than what he would have regarded as normal following an occupancy of six and one-half years.

The general contractor had assisted the landlord in preparing the premises for initial occupancy in 1998 and had been on the premises to do routine maintenance repairs during the course of the tenancy. On one occasion on the premises, the defendant had indicated to him that she did not like the plaintiff. He recalled her characterization of the landlord as "bitch." As noted, the feelings apparently were mutual.

Following the termination of the tenancy, the plaintiff refused to return the security deposit. A dispute ensued. The

net result was the plaintiff landlord obtaining a judgment in small claims court for approximately $2,800, and she was not required to return the security deposit. The correspondence during that period, which is in evidence, includes a number of unopened letters on which the defendant wrote comments that testify to her animosity to the plaintiff, and that tend to confirm the contractor's testimony regarding the language that the tenant earlier had used to describe the plaintiff.

## CONCLUSIONS OF LAW

The question is whether the money judgment that the plaintiff obtained against the defendant is excepted from discharge under 11 U.S.C. § 523(a)(6), which requires that injury to plaintiff have been willful and malicious. The United States Supreme Court has established the standard in the leading case of Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57 (1998). The rule from Geiger has been further refined by the Ninth Circuit to entail a subjective approach to the requirement of willfulness such that a defendant must have subjective belief that injurious consequences were substantially certain to result from the conduct in question. Carrillo v. Su (In re Su), 290 F.3d 1140 (9th Cir. 2002). In addition, malicious conduct must necessarily cause injury. Petralia v. Jercieh (In re Jercieh), 238 F.3d 1202 (9th Cir.), cert. denied, 533 U.S. 930 (2001).

The court is persuaded that the damage that occurred to the premises during the tenancy of the defendant did exceed the standards of normal wear and tear. It is plain that the defendant was not entitled to the return of her security deposit,

and the state court has fixed the total amount of damages at approximately $2,800. The question is whether the various items of damage meet the standards established by the decisions of the Supreme Court and the United States Court of Appeals for the Ninth Circuit.

The court is persuaded that the damage, although greater than normal wear and tear, was not inflicted with intent to cause damage or in circumstances in which the actor subjectively believed that damage was substantially certain to result. To be sure, there is considerable animus against the plaintiff on the part of the defendant. Nevertheless, the court is not persuaded by a preponderance of the evidence that the circumstances in which the subject damage occurred were willful and malicious within the meaning of § 523(a)(6). Hence, a judgment will be entered determining that the debt is dischargeable.

Dated: March 31, 2006.

UNITED STATES BANKRUPTCY JUDGE

**CERTIFICATE OF SERVICE**

    On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

Jeanie Vanetti
PO Box 368
Dixon, CA 95620

Douglas B. Jacobs
20 Independence Cir
Chico, CA 95973

Dated: APR - 3 2006

DEPUTY CLERK

Sarah Milton

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

Office of the U.S. Trustee
501 I St., #7-500
Sacramento, CA 95814

DATED: APR - 3 2006

By: ______________________
Deputy Clerk

Sarah Milton

EDC 3-070 (New 4/21/00)